# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISON

| | |
|---|---|
| ALFRADO MARTINEZ, § § § § § *Plaintiff*, § v. § § SUPERIOR HEALTHPLAN, a § subsidiary of CENTENE § CORP., § § *Defendant*. § | CIVIL ACTION NO. 1:22-cv-450 JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff ALFRADO MARTINEZ ("Plaintiff"), by and through his attorneys, ELLWANGER LAW LLLP, brings this action for damages and other legal and equitable relief from the Defendant's violation of the laws proscribing discrimination based on sex, sexual orientation, and national origin against Defendant, SUPERIOR HEALTHPLAN a subsidiary of CENTENE CORP. ("Defendant").

## INTRODUCTION

This is an action brought by Plaintiff seeking damages from Defendant for acts of intentional discrimination based on sex, sexual orientation, and national origin, as well as for acts of retaliation. Defendant's acts of discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*„ and any other cause(s) of action that can be inferred from the facts set forth herein.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States and under 28 U.S.C. § 1343(a)(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**PARTIES**

3. At all relevant times, Defendant has continuously been and is now doing business in the State of Texas and has continuously had at least fifteen employees.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce as those terms are defined in 42 U.S.C. §2000e and the Texas Employment Discrimination Act.

5. Defendant is a wholly owned subsidiary of a publicly traded incorporated entity that operates in the managed healthcare industry to serve as an intermediary for government-sponsored and privately insured health care programs across the United States of America. Defendant is headquartered at 5900 E. Ben White Blvd., Austin, TX.

6. At all relevant times, Plaintiff worked at Defendant's facility in Austin, Texas.

7. At all relevant times, Plaintiff was an employee of Defendant as that term is defined in Title VII and the Texas Employment Discrimination Act.

8. Plaintiff's is of Hispanic and American Indian national origin.

9. Plaintiff is a gay man.

**FACTS UNDERLYING CLAIMS**

10. On or around February 22. 2018, Defendant offered Plaintiff a position as a Program Performance Analyst at Defendant's Austin, TX office. The position would report directly to Defendant's employee, Cathy S. Lannan Hosek ("Ms. Hosek").

11. Plaintiff officially began working in the position for Defendant on or around March 19, 2018. As part of his job duties, Plaintiff was responsible for analyzing various medical management programs that impact health plan accreditations, auditing various departments related to these programs, developing trainings based on the audits for Defendant's Medical Management Department, and analyzing data related to Defendant's Medicare and Medicaid patients.

12. Throughout Plaintiff's employment with Defendant, Plaintiff was subjected to an environment of pervasive discrimination and harassment on a near constant and daily basis.

13. In the first two weeks of Plaintiff's employment, Plaintiff has conversations with his coworkers, Ms. Hosek, and Defendant's Head of Compliance, Tim Springer ("Mr. Springer"), that made it generally known among employees at Defendant's Austin, Texas office, and specifically by Ms. Hosek, and Mr. Springer that Plaintiff identifies as a gay man of Hispanic and American Indian descent.

   *a. Hostile Work Environment – National Origin*

14. As Plaintiff began his employment, he was continually harassed by his direct manager, Ms. Hosek, on a near constant and daily basis because of his national origin.

15. Ms. Hosek, a non-Hispanic woman, specifically assumed that Plaintiff could speak Spanish after learning that Plaintiff was of Hispanic national origin. Ms. Hosek then attempted to speak Spanish with Plaintiff, but Plaintiff cannot speak Spanish.

16. Plaintiff immediately informed Ms. Hosek that he could not speak Spanish and requested that Ms. Hosek stop speaking the language to him. However, Ms. Hosek ignored Plaintiff's requests and insisted on speaking Spanish to Plaintiff on a daily basis.

17. On almost every occasion, Plaintiff told Ms. Hosek that he did not speak Spanish and requested that Ms. Hosek stop assuming Plaintiff could speak the language.

18. Ms. Hosek continued to ignore Plaintiff's requests and frequently taunted Plaintiff for his inability to speak the language. For example, Ms. Hosek made comments such as "boy, you need to learn how to speak Spanish. You live in Texas now."

19. There was no basis for Ms. Hosek to continue to ignore Plaintiff's requests or to speak Spanish to Plaintiff as there was no Spanish fluency requirement for the effective performance of Plaintiff's position with Defendant.

20. Plaintiff further observed that Ms. Hosek did not try to speak Spanish with Plaintiff's non-Hispanic coworkers.

21. Upon information and belief, Ms. Hosek targeted comments on the Spanish language was only because of her knowledge of Plaintiff's Hispanic national origin.

22. In addition, Plaintiff experienced discrimination and harassment on the basis of his American Indian national origin.

23. In or around May 2018, Plaintiff reported Defendant's fraudulent procedures that he had uncovered while analyzing Defendant's Medicaid and Medicare practices. Plaintiff reported the fraudulent procedures to an outside agency.

24. Shortly afterwards, Mr. Springer learned of Plaintiff's external report. Mr. Springer proceeded to confront Plaintiff rather than address the fraudulent procedures. In the confrontation,

Mr. Springer refenced Plaintiff's national origin by stating that Plaintiff "went off the reservation" through his actions.

25. Plaintiff immediately found the comment insensitive and offensive towards his American Indian national origin.

### b. Hostile Work Environment – Sex

26. Shortly after Ms. Hosek learned that Plaintiff was gay, she proceeded to taunt and belittle Plaintiff for his sexual orientation on a constant and daily basis.

27. Specifically, Ms. Hosek began telling Plaintiff to "pull up his big girl panties" on an approximately weekly basis in regard to assignments. Ms. Hosek made this offensive comment directly towards Plaintiff.

28. Ms. Hosek further began calling Plaintiff insensitive and offensive names based on Plaintiff's sexual orientation. Ms. Hosek referred to Plaintiff as "girl" and "chica" constantly and in a demeaning fashion.

29. Plaintiff observed that Ms. Hosek only began referring to him by such names after Ms. Hosek learned that Plaintiff is a gay man.

### c. Retaliation

30. On or around May 31, 2018, Plaintiff reported to Defendant's Human Resources ("HR") Department his experiences of pervasive experiences of discrimination and harassment.

31. Plaintiff specifically spoke with Defendant's HR Representative, Trevan Ross ("Mr. Ross"), and reported his hostile work environment experiences.

32. Mr. Ross subsequently opened up an investigation into Plaintiff's complaints. The investigation confirmed that Mr. Springer had told Plaintiff that he "went off the reservation."

Upon information and belief, Mr. Ross' investigation did not go further and did not investigate Ms. Hosek's discriminatory conduct.

33. Mr. Ross proceeded to dismiss any corrective based on his limited investigation despite Mr. Ross confirming the Mr. Springer's offensive comment. Mr. Ross, on behalf of Defendant, dismissed corrective action on the grounds that the offensive comment was a mere colloquialism and part of casual conversation.

34. Shortly after the HR investigation, Plaintiff was demoted. Upon information and belief, Defendant demoted Plaintiff to a diminished position without significant responsibility because of Plaintiff's complaints.

35. Plaintiff was relegated to clerical work and received a change in title from a Program Performance Analyst to a Medical Program Specialist.

36. In addition, Plaintiff experienced several forms of retaliation intent on punishing Plaintiff for engaging in a protected workplace activity.

37. Specifically, Plaintiff was disinvited from board meetings, department head meetings, and quality control meetings that he had previously attended as part of his job duties. Plaintiff asked Ms. Hosek why he was disinvited from such meetings and was told that he had been replaced by someone else in the department.

38. Plaintiff was then barred from working remotely. Upon information and belief, no other employee in Plaintiff's department was barred from working remotely.

39. Ms. Hosek further began to require that Plaintiff submit detailed reports on every task he completed by the hour. Every other employee in Plaintiff's department only had to submit daily reports of their tasks.

40. Additionally, Ms. Hosek barred Plaintiff from altering his schedule or making changes to his schedule. Instead, Ms. Hosek dictated a strict schedule for Plaintiff.

41. Upon information and belief, Defendant's management demoted Plaintiff, altered his work duties, disinvited him from meetings, and treated him differently than other employees because Plaintiff reported his experiences of pervasive discriminatory conduct.

### d. Retaliatory Termination

42. On or around June 15, 2019, Mr. Ross offered Plaintiff twelve (12) weeks of severance pay if Plaintiff would resign his position with Defendant. Mr. Ross did not allow Plaintiff to consider denying this offer, as Plaintiff was threatened with disciplinary action/termination if he refused to accede to the deal.

43. As a result, on the same day, Plaintiff felt forced to accept the deal and signed the written agreement. Plaintiff then returned his company equipment and prepared to leave his employment with Defendant.

44. However, the written release agreement contained a clause that Plaintiff had seven (7) days to consider the deal and contained a seven (7) day revocation clause.

45. Plaintiff subsequently realized that the written agreement included provisions that waived Plaintiff's claims of harassment, discrimination, and retaliation against Defendant. Plaintiff decided to revoke the agreement because of the waiver provisions and attempted to return to his position with Defendant.

46. Defendant subsequently acknowledged Plaintiff's revocation of the written agreement and suspended the severance pay/benefits that Plaintiff would have received. However, Defendant did not allow Plaintiff to return to work, effectively terminating Plaintiff's employment.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Intersectional Discrimination)**

47. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

48. The conduct alleged herein violates Section 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Plaintiff was subjected to a hostile work environment and disparate terms and conditions of employment due to intersectional discrimination based on sex (sexual orientation) and national origin.

49. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Discrimination Based on National Origin)**

50. Plaintiff is a member of protected classes and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

51. Due to Plaintiff's Hispanic and American Indian national origins, Defendant subjected Plaintiff to discrimination, including but not limited to harassment based on disparate treatment and offensive language.

52. The conduct alleged herein violates Section 703 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e et seq.

53. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Discrimination Based on Sex)**

54. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

55. Due to Plaintiff's sexual orientation, Defendant subjected Plaintiff to discrimination based on sex, including but not limited to sexual orientation harassment and disparate terms and conditions of employment. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000e et seq., as Defendant has engaged in the practice of discrimination with respect to the terms and conditions of Plaintiff's employment.

56. Plaintiff's requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### (Retaliation)

57. Plaintiff is a member of protected classes and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

58. Plaintiff lodged complaints with Defendant regarding the discrimination and hostile work environment to which he was subjected, and as such, engaged in protected activity under Title VII.

59. Defendant retaliated against Plaintiff by, among other things, differential treatment, demotion, disparate policy application, and termination of Plaintiff.

60. The conduct alleged herein violates Section 704 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e et seq.

61. Plaintiff's requests for relief are set forth below.

### DEMAND FOR JURY TRIAL

62. Plaintiff demands a jury trial on all matters raised in this Complaint.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

63. That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the federal law identified above prohibiting discrimination and retaliation in employment;

64. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiff;

65. That Plaintiff be awarded compensatory damages for his employment discrimination claims including for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

66. That Plaintiff be awarded punitive damages for discriminatory practices done with malice or with reckless indifference to the federally protected rights of Plaintiff;

67. That Plaintiff be awarded pre-and post-judgment interest;

68. That the Court award Plaintiff reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

69. That the Defendant be ordered to require training regarding discrimination based upon race and discrimination based on retaliation.

70. That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

71. That the Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: May 11, 2022,                    Respectfully submitted,

*/s/ Holt M. Lackey*
Holt M. Lackey
Texas State Bar No. 24047763
hlackey@equalrights.law
Ellwanger Law LLLP
8310-1 N. Capital of Texas Hwy., Ste. 190
Austin, Texas 78731
Telephone: (737) 808-2260
Facsimile: (737) 808-2262
